IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------X

ELIZABETH ARCE,

                       Plaintiff,

        - against -

THE CITY OF NEW YORK, a municipal entity,
NEW YORK CITY POLICE SERGEANT
"JOHN DOE", NEW YORK CITY POLICE
OFFICERS "JOHN DOES 1-2", and NEW
YORK CITY POLICE OFFICERS "JOHN
DOES 3-53",

                     Defendants.

------------------------------------------------------------------X

**INDEX NO.**

**13 CV 8486**

**JURY TRIAL DEMANDED**

**COMPLAINT**

RECEIVED
NOV 27 2013
U.S.D.C. S.D. N.Y.
CASHIERS

Plaintiff, by her attorneys, STECKLOW COHEN & THOMPSON, complaining of the defendants, respectfully alleges as follows:

## I.    PRELIMINARY STATEMENT

      1.    Plaintiff bring this action for compensatory damages, punitive damages, and attorney's fees pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988 for violations of her civil rights, as said rights are secured by said statutes and the Constitutions of the State of New York and the United States.

      2.    Plaintiff brings this action in order to redress the damages done to her as a result of two unlawful arrests rendered by the Defendant NEW YORK CITY POLICE SERGEANT "John Doe", NEW YORK CITY POLICE OFFICERS "John Does 1-2", and NEW YORK CITY POLICE OFFICERS "John Does 3-53" ("the Defendant POLICE OFFICERS") acting under the powers and authorities bestowed on them by Defendant THE CITY OF NEW YORK.

3.      On March 17, 2012, Plaintiff was in Zuccotti Park as a participant of Occupy Wall Street's ("OWS") sixth-month anniversary event. OWS began on September 17, 2011 and is a movement that, *inter alia,* protests the institutionalized inequality in this country that funnels almost all of the nation's political power, wealth, and resources to a tiny fraction of people and their corporations, and denies the vast majority of Americans their fair share. One journalist who was present that evening described the event as 'the most violent police response that he had seen at an OWS protest."[1] That night, Plaintiff was falsely arrested and detained by the Defendant POLICE OFFICERS. The Defendant POLICE OFFICERS used unjustified force against Plaintiff. The Defendant POLICE OFFICERS detained Plaintiff for approximately thirty (30) hours before releasing her without charges.

4.      On March 29, 2012, Plaintiff was present inside of 120 Wall Street for WBAI RADIO's "24 Hour Radio" event. Plaintiff attended the "24 Hour Radio" event in hopes of meeting fellow media and communications professionals. Following the event, Plaintiff exited 120 Wall Street. The Defendant POLICE OFFICERS who were present outside of 120 Wall street approached Plaintiff, and ordered her to leave the plaza area outside of the building. Despite the fact that Plaintiff complied with the Defendant POLICE OFFICERS' order, the Defendants arrested Plaintiff, in direct retaliation for Plaintiff's exercise of her First Amendment protected rights to record and comment upon police activity..  The Defendant POLICE OFFICERS detained Plaintiff and brought charges against her. **All charges were later dismissed by the Court.**

---

[1] Sarah Knuckley et al., "Suppressing Protest: Human Rights Violations in the U.S. Response to Occupy Wall Street," The Protest and Assembly Rights Project (2012). Report incorporated by reference herein and available online at: http://chrgj.org/documents/suppressing-protest-human-rights-violations-in-the-u-s-response-to-occupy-wall-street/

5.     In sum, Plaintiff brings this claim to learn why she was twice punitively arrested, detained at length, and subjected to official action despite the fact that she had not, on either occasion, engaged in any illegal conduct.

## II.     JURISDICTION

6.     This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988, and the First, Fourth and Fourteenth Amendments to the United States Constitution. Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331, 1343(a)(3) and (a)(4) and the aforementioned statutory and constitutional provisions.

7.     Plaintiff further invokes this Court's supplemental jurisdiction, pursuant to 28 U.S.C. § 1367, over any and all State law claims and causes of action which derive from the same nucleus of operative facts and are part of the same case or controversy that gives rise to the federally based claims and causes of action.

## III.     VENUE

8.     Venue is laid within the United States District Court for the Southern District of New York in that the claims at issue here arose in this District.

## IV.     JURY DEMAND

9.     Plaintiff respectfully demands a trial by jury for all issues in this matter pursuant to Fed R. Civ. P. 38(b).

## V.     THE PARTIES

10.     Plaintiff is a United States Citizen and resides in Grand Forks County, North Dakota.

11.     Pursuant to the court's Plan for Certain §1983 Cases Against the City of New York, Plaintiff's §160.50 release is attached to the Complaint herein as "**Exhibit A**".

12.     Each of the Defendant POLICE OFFICERS at all times here relevant were members of the New York City Police Department ("NYPD").

13.     The Defendant NEW YORK CITY POLICE OFFICERS "John Does 3-53" make up the police officers who were present throughout some or all of Plaintiff's March 17, 2012 unlawful arrest.

14.     Defendant NEW YORK CITY POLICE SERGEANT "John Doe" presented as Asian, appeared to be in his late thirties, and was wearing a police uniform on the date of Plaintiff's March 29, 2012 unlawful arrest.  Upon information and belief, Defendant NEW YORK CITY POLICE SERGEANT's surname was "Li".

15.     The Defendant NEW YORK CITY POLICE OFFICERS "John Does 1-2" make up the police officers who, along with Defendant NEW YORK CITY POLICE SERGEANT "John Doe", who participated in Plaintiff's March 29, 2012 unlawful arrest.

16.     One of the Defendant NEW YORK CITY POLICE OFFICERS "John Does 1-2" presented as Indian, was approximately thirty years of age, and was wearing a police uniform on the date of the March 29, 2012 incident.  Upon information and belief, this same Defendant "John Doe" POLICE OFFICER's badge number was "1137" on the date of the March 29, 2012 incident and arrest in question.

17.     Defendant THE CITY OF NEW YORK was and is a municipal corporation organized under the laws of the State of New York.

18.     Defendant THE CITY OF NEW YORK maintains the NYPD, a duly authorized public authority and/or police department, authorized to perform all functions of a police department as per the applicable sections of the New York State Criminal Law, acting under the direction and supervision of the aforementioned municipal corporation, Defendant THE CITY OF NEW YORK.

19.     That at all times hereinafter mentioned, the Defendant POLICE OFFICERS were duly sworn police officers of said department and were acting under the supervision of said department and according to their official duties.

20.     That at all times relevant to this action, the Defendant POLICE OFFICERS, either personally or through their agents, servants and employees, were acting under color of state law and/or in compliance with the official rules, regulations, laws, statutes, customs, usages, and/or practices of the State or City of New York.

21.     Each and all of the acts of the Defendant POLICE OFFICERS alleged herein were done by said defendants while acting in furtherance and within the scope of their employment by Defendant THE CITY OF NEW YORK.

VI.     **FACTS COMMON TO ALL CLAIMS**

22.     Plaintiff is a twenty-five-year-old graduate of Hunter College, with a Bachelor of Arts in Music and Jazz Theory.

23.     During certain portions of the incidents described herein, Plaintiff was working as a "Live-Streamer" for OWS "Occupy Radio" team.

24.     OWS does not have privileged access to institutionalized media in the same way that the elite who have gamed the political system do, and so OWS relies on old fashioned human-to-human contact (e.g., "occupying" a location, or engaging in a

march or demonstration) as well as using internet-based communication like live-streaming.

26. Live-streaming describes the process of filming activities at one or more locations while concurrently allowing individuals—— through the use of the internet —— to view those same activities from other locations, in real time.

26. Live-streaming plays an important role in furthering the OWS movement in that it allows a greater number of individuals to view OWS meetings, marches, gatherings, demonstrations, and other similar events and thereafter become inspired by same.  Live-streaming extends the reach of the authentic, human-to-human contact which is an essential part of OWS and its message.

27. In its restrictive and punitive approach to the OWS movement, Defendant THE CITY OF NEW YORK, through the NYPD, has consistently targeted live-streamers and their equipment. Plaintiff Elizabeth Arce is just another victim in this campaign to silence the OWS message.

THE DEFENDANT POLICE OFFICERS INFRINGE UPON
PLAINTIFF'S EXERCISE OF HER FIRST AMENDMENT RIGHTS BY
SUBJECTING HER TO RETALIATORY FALSE ARREST ON MARCH 17, 2012.

28. On the evening of March 17th, 2012 Plaintiff was present in Zuccotti Park as a participant of OWS' sixth-month anniversary event.

29. While an illegal Midnight police raid had terminated the full-time occupation of Zuccotti Park the previous November, the location remained symbolic of the OWS message.

30. The purpose of the event was political speech: to say that OWS still exists even though the full-time occupation does not, and, to remind people that the existential

threat to human democracy represented by the corporate-elite's capture of our governmental and societal institutions continues, and must be solved.

31.    Plaintiff was recording portions of the event in furtherance of her work as an OWS live-streamer.

32.    A report of the Protest and Assembly Rights Project (a joint project of the law schools of NYU and Fordham) summarized the NYPD's response to the March 17, 2012 peaceable assembly at Zuccotti Park:

> According to witnesses and news reports, police moved into Zuccotti Park where protesters were peacefully assembling, ordered everyone to disperse, and sought to close the park.  The reasons for the police action are unclear....  There are no reports or indications of any imminent or ongoing criminal activity or danger to public safety posed by the assembly.  According to reports, the police, in seeking to disperse the assembly, then used unnecessary force against those in and around the park, including those engaged in passive resistance, as well as those seeking to leave the park in accordance with the dispersal order.[2]

33.    Plaintiff was victimized as part of this unprovoked and unnecessary mass arrest.

34.    Defendants' response to Plaintiff's assembly was a blatant violation of Plaintiff's First Amendment protected rights to freedom of speech, and freedom of assembly.

35.    Defendants had erected metal barricades around the park, requiring Plaintiff and other demonstrators to submit to searches of their personal belongings, just to enter the park.

36.    These searches violated Plaintiff's and other demonstrators Fourth Amendment protected rights.

---

[2] *Id.*

**37.**     At around 10:00pm, one or more of the Defendant POLICE OFFICERS present announced that Zuccotti Park was "closed."

**38.**     In response, Plaintiff began exiting Zuccotti Park.

**39.**     Before Plaintiff could do so, one or more of the Defendant POLICE OFFICERS approached and began pushing Plaintiff.

**40.**     At and around the same time that Plaintiff was being arrested, dozens of other people present were being arrested.

**41.**     Upon information and belief, the Defendant POLICE OFFICERS simply decided to perform a mass arrest of those who were legally present in Zuccotti Park, and peacefully partaking in an OWS demonstration, without individualized probable cause, arresting Plaintiff in the process.

**42.**     Upon information and belief, Plaintiff was also targeted for arrest because she was engaging in live-streaming.

**43.**     Upon information and belief, the Defendants randomly selected Plaintiff for arrest in order to frighten and deter others from engaging in peaceful OWS demonstrations and events.

**44.**     One or more of the Defendant POLICE OFFICERS applied plastic flex-cuffs tightly around Plaintiff's wrists, causing her severe pain.

**45.**     One or more of the Defendant POLICE OFFICERS walked Plaintiff toward a nearby MTA bus, which the officers were using to hold arrestees.

**46.**     On information and belief, the Defendant POLICE OFFICERS and their supervisors had arranged for the use of a large MTA bus for the evening of March 17, 2012 because they intended to conduct the illegal mass arrest that occurred.

47.     The Defendant POLICE OFFICERS repeatedly shoved Plaintiff while walking her to the bus, despite the fact that she was at all times compliant with their orders.

48.     The Defendant POLICE OFFICERS used the bus to transport Plaintiff and other arrestees to the Midtown South Precinct ("the precinct").

49.     On information and belief, the bus was at or above its maximum seating capacity of approximately fifty (50) persons.

50.     After arriving at the precinct, one or more of the Defendant POLICE OFFICERS walked Plaintiff into the building.

51.     The Defendant POLICE OFFICERS searched Plaintiff and removed her personal belongings.

52.     The Defendant POLICE OFFICERS placed Plaintiff and other arrestees into a holding cell.

53.     The Defendant POLICE OFFICERS placed Plaintiff into the holding cell with approximately twenty-five (25) other arrestees.

54.     Upon information and belief, the holding cell was designed to hold no more than ten (10) persons.

55.     Plaintiff spent the evening in the holding cell.

56.     Plaintiff and other arrestees continued exercising their First Amendment protected rights by repeating OWS chants and calls while in the holding cell.

57.     One or more of the Defendant POLICE OFFICERS threatened Plaintiff and other arrestees with a Taser gun.

58.     One or more of the Defendant POLICE OFFICERS falsely told Plaintiff that she was being charged with violating P.L. §240.20 – Disorderly Conduct; P.L. §205.30 – Resisting Arrest; and P.L. §195.05 - Obstruction of Governmental Administration in the Second Degree.

59.     At or around 6:00pm on Sunday March 18, 2012 the Defendant POLICE OFFICERS transferred Plaintiff to central booking.

60.     The Defendant POLICE OFFICERS fingerprinted and photographed Plaintiff.

61.     The Defendant POLICE OFFICERS took possession of Plaintiff's personal belongings.

62.     The Defendant POLICE OFFICERS held Plaintiff at central booking until her release, at approximately 4:00am on March 19, 2012.

63.     At or around 10:00am on March 19, 2012, Plaintiff had to return to central booking to retrieve her personal belongings.

64.     The Defendant POLICE OFFICERS did not charge Plaintiff with any violations or crimes.

65.     Plaintiff had not engaged in any illegal or unlawful conduct.

66.     Nonetheless, the Defendant POLICE OFFICERS held Plaintiff in their custody for a total of approximately thirty (30) hours.

<u>THE DEFENDANT POLICE OFFICERS INFRINGE UPON
PLAINTIFF'S EXERCISE OF HER FIRST AMENDMENT RIGHTS BY
SUBJECTING HER TO RETALIATORY FALSE ARREST ON MARCH 29, 2012.</u>

67.     On March 29, 2012, as a member of Occupy Wall Street's Occupy Radio team, Plaintiff attended WBAI Radio's "24 Hour Radio" event.

**68.**     Plaintiff attended the event in order to network with fellow professionals in the media and communications field.

**69.**     WBAI Radio uses 120 Wall Street as its headquarters.

**70.**      A set of benches and trees that are an extension of the sidewalk along Wall Street sits directly outside the doorway entrance/exit of 120 Wall Street.

**71.**     This set of benches and trees does not appear to be a separate park, but just part of the sidewalk.

**72.**     During or shortly after the WBAI Radio event, Plaintiff exited the building and signed out from same.

**73.**     Plaintiff saw a few of her friends and colleagues sitting on the benches along the extended sidewalk alongside the building.

**74.**     At or around this time, one or more of the Defendant POLICE OFFICERS approached Plaintiff.

**75.**     One or more of the Defendant POLICE OFFICERS stated, in sum and substance, "The park is closed."

**76.**     Plaintiff began leaving the area.

**77.**     One or more of the Defendant POLICE OFFICERS stepped in front of Plaintiff, thereby impeding her forward progress.

**78.**     At or around this time, Plaintiff removed her cell phone and began recording the incident in question.

**79.**     Confused by the Defendant POLICE OFFICERS' actions, Plaintiff asked the Defendant POLICE OFFICERS, "Am I being detained?"

**80.**     Plaintiff stated, "I was just in the building."

**81.** Plaintiff stated, "I was just leaving."

**82.** Plaintiff asked, "Why am I being detained?"

**83.** The Defendant POLICE OFFICER stated, "I was going to get your ID, warn you about this, and you get the hell out of here."

**84.** Plaintiff stated, "Then I'll just do that."

**85.** The Defendant POLICE OFFICER stated, "It's too late now, you can't be bringing out a camera, saying 'why are you detaining me?' and trying to force it like that.'"

**86.** Plaintiff stated, "I have every right to film the police."

**87.** The Defendant POLICE OFFICER stated, "Then I will arrest you."

**88.** The Plaintiff was placed under arrest.

**89.** The Defendant POLICE OFFICERS placed Plaintiff into a nearby police vehicle and drove Plaintiff to the 1st Precinct.

**90.** The Defendant POLICE OFFICERS placed Plaintiff into a holding cell within the 1st Precinct.

**91.** There the Defendant POLICE OFFICERS detained Plaintiff for approximately two (2) hours.

**92.** The Defendant POLICE OFFICERS wrote Plaintiff two summons for violating sections within the New York Park Rules and Regulations ("NYPRR").

**93.** Plaintiff did no such thing.

**94.** Nonetheless, Plaintiff was forced to appear before the court on or around May 12, 2012.

95.     All charges against Plaintiff were dismissed due to the *sua sponte* decision, of the Criminal Court of the City of New York – County of New York, that "the NYPD has failed to file a legally acceptable accusatory instrument with this court."  Ms. Arce was forced to appear in the courthouse to receive this document, but did not appear before a Judge.

96.     As a result of the Defendant POLICE OFFICERS' constitutionally-violative conduct, Plaintiff was caused to suffer personal injuries, violation of her civil rights, emotional distress, anguish, anxiety, fear, humiliation, loss of freedom, loss of wages, and damage to her reputation and standing within her community.

97.     As a result of Defendants' impermissible conduct, Plaintiff demands judgment against Defendants in an amount of money to be determined at trial.

## FIRST CLAIM FOR RELIEF

### DEPRIVATION OF FEDERAL CIVIL RIGHTS
### UNDER 42 U.S.C. § 1983

98.     Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

99.     All of the aforementioned acts of Defendant THE CITY OF NEW YORK and of the Defendant POLICE OFFICERS and their agents, servants and employees, were carried out under the color of state law.

100.    All of the aforementioned acts deprived Plaintiff of the rights, privileges and immunities guaranteed to citizens of the United States by the First, Fourth, and Fourteenth Amendments to the Constitution of the United States of America, and in violation of 42 U.S.C. § 1983.

101.    The acts complained of were carried out by the aforementioned individual Defendant POLICE OFFICERS in their capacities as police officers, with all of the actual and/or apparent authority attendant thereto.

102.    The acts complained of were carried out by the aforementioned individual Defendant POLICE OFFICERS in their capacities as police officers, pursuant to the customs, usages, practices, procedures, and the rules of the Defendant THE CITY OF NEW YORK and the NYPD, all under the supervision of ranking officers of said department.

103.    The individual Defendant POLICE OFFICERS and Defendant THE CITY OF NEW YORK, collectively and individually, while acting under color of state law, engaged in constitutionally-violative conduct that constituted customs, usages, practices, procedures or rules of the respective municipality/authority, which are forbidden by the Constitution of the United States.

104.    As a result of Defendants' wrongful conduct, Plaintiff was caused to suffer personal injuries, violation of her civil rights, emotional distress, anguish, anxiety, fear, humiliation, loss of freedom, and damage to her reputation and standing within her community.

105.    The Plaintiff therefore demands judgment against Defendants in an amount to be determined at trial.

## SECOND CLAIM FOR RELIEF

### FALSE ARREST UNDER 42 U.S.C. § 1983

**106.**     Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

**107.**     As a result of the aforesaid conduct by the Defendant POLICE OFFICERS, Plaintiff was subjected to arrest without probable cause and without a warrant on March 17, 2012 and on March 29, 2012.

**108.**     As a result of the foregoing, Plaintiff's liberty was restricted for extended periods of time.

**109.**     As a result of Defendants' wrongful conduct, Plaintiff was caused to suffer personal injuries, violation of her civil rights, emotional distress, anguish, anxiety, fear, humiliation, loss of freedom, and damage to her reputation and standing within her community.

**110.**     Plaintiff therefore demands judgment against Defendants in an amount to be determined at trial.

## **THIRD CLAIM FOR RELIEF**

### FAILURE TO INTERVENE UNDER 42 U.S.C. §1983

**111.**     Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

**112.**     On March 17, 2012 and on March 29, 2012, each of the Defendant POLICE OFFICERS had an affirmative duty to intervene on Plaintiff's behalf in order to prevent the violation of her constitutional rights.

113.   Each of the Defendant POLICE OFFICERS chose not to intervene on Plaintiff's behalf in order to prevent the violation of her constitutional rights despite having had realistic opportunities to do so, and despite having substantially contributed to the circumstances within which Plaintiff's rights were violated by the Defendants affirmative conduct.

114.   As a result of the aforementioned conduct of the individual Defendant POLICE OFFICERS, Plaintiff's constitutional rights were violated.

115.   As a result of Defendants' wrongful conduct, Plaintiff was caused to suffer personal injuries, violation of her civil rights, emotional distress, anguish, anxiety, fear, humiliation, loss of freedom, and damage to her reputation and standing within her community.

116.   Plaintiff therefore demands judgment against Defendants in an amount to be determined at trial.

## FOURTH CLAIM FOR RELIEF

### EXCESSIVE FORCE UNDER 42 U.S.C. § 1983

117.   Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

118.   The Defendant POLICE OFFICERS utilized excessive force against Plaintiff by handcuffing and arresting her in the absence of probable cause to do so, on March 17, 2012 and on March 29, 2012.

119.     The Defendant POLICE OFFICERS utilized excessive force against Plaintiff by repeatedly pushing and shoving her, despite the fact that Plaintiff was at all times compliant with their orders.

120.     The level of force employed by the Defendant POLICE OFFICERS against Plaintiff was objectively unreasonable.

121.     The force employed by the Defendant POLICE OFFICERS against Plaintiff did not advance any proper governmental objective.

122.     As a result of the aforementioned conduct of the Defendant POLICE OFFICERS, Plaintiff was subjected to excessive force and sustained physical injuries.

123.     As a result of the aforementioned conduct of the Defendant POLICE OFFICERS, Plaintiff suffered injuries to her hands and wrists.

124.     In addition, as a result of Defendants' wrongful conduct, Plaintiff was caused to suffer personal injuries, violation of her civil rights, emotional distress, anguish, anxiety, fear, humiliation, loss of freedom, and damage to her reputation and standing within her community.

125.     Plaintiff therefore demands judgment against Defendants in an amount to be determined at trial.

### FIFTH CLAIM FOR RELIEF

RETALIATION FOR FIRST AMENDMENT
PROTECTED EXPRESSION UNDER 42 U.S.C. § 1983

126.     Plaintiff repeats, reiterates and re-alleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

127.    The Defendant POLICE OFFICERS subjected Plaintiff to arrest on March 17, 2012, and on March 29, 2012 to retaliate against her for exercising her First Amendment protected rights.

128.    On March 17, 2012, the Defendant POLICE OFFICERS subjected Plaintiff to arrest to retaliate against her for exercising her First Amendment protected right to lawfully assemble in Zuccotti Park, and participate in the Occupy Wall Street movement.

129.    On March 29, 2012, the Defendant POLICE OFFICERS subjected Plaintiff to arrest to retaliate against her for exercising her First Amendment protected rights by lawfully recording the Defendant POLICE OFFICERS' conduct, and for lawfully asking why she was being detained.

130.    Because of her participation in these First Amendment protected activities, Plaintiff was twice arrested without probable cause and without a warrant.

131.    Because of her participation in these First Amendment protected activities, Plaintiff was subjected to excessive force.

132.    As a result of Defendants' wrongful conduct, Plaintiff was caused to suffer personal injuries, violation of her civil rights, emotional distress, anguish, anxiety, fear, humiliation, loss of freedom, and damage to her reputation and standing within her community.

133.    The Plaintiff therefore demands judgment against Defendants in an amount to be determined at trial.

## SIXTH CLAIM FOR RELIEF

### MUNICIPAL LIABILITY UNDER *MONELL*

**134.**     Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein

<u>THE CITY OF NEW YORK AND THE NYPD HAVE A POLICY AND PRACTICE OF TARGETING PARTICIPANTS IN OCCUPY WALL STREET ACTIVITIES FOR ARREST WITHOUT CAUSE AND THEREAFTER COMMITTING PERJURY IN ORDER TO IMPOSE CRIMINAL CHARGES ON SAID ARRESTEES.</u>

**135.**     According to The New York Times, as of June 18, 2012, over 2,500 participants in Occupy Wall Street activities had been arrested in Manhattan alone.  Upon information and belief, the vast majority of the cases were dismissed or otherwise resolved without criminal penalty.

**136.**     In other words, over the period of less than a year, Defendant THE CITY OF NEW YORK caused hundreds or thousands of protestors – who had committed no crime -- to be arrested.

**137.**     Upon information and belief, the NYPD's response to the Occupy movement follows mass arrest policies that were established at or before the time of the 2004 Republican convention, during which over 1,800 people were arrested, with more than 90 percent of the arrest cases being dismissed or ending with not-guilty verdicts.

**138.**     Upon information and belief, the police have been documented to have filed false criminal charges against individuals who were arrested during a January 1, 2012 OWS march which is similar to the subject of this action in that both events were related to OWS.

**139.**     Plaintiff was also unlawfully arrested on January 1, 2012 during her participation in an OWS march.  Further details surrounding said unlawful arrest can be

found at <u>Peat, et al. v. City of New York, et al.</u> Civil Action No. 12-CV-8230 (SAS),

Southern District of New York (filed November 13, 2012).

140.    Upon information and belief, in one such arrest that took place on January

1 2012, Alexander Arbuckle was arrested on charges that he was standing in the street

blocking traffic. The arresting officer, Officer Elisheba Vera, swore to this version of

events on the witness stand at trial. However, photo and video evidence —— including

video taken by the NYPD's video unit —— demonstrated that Arbuckle was on the

sidewalk when he was  arrested. As the magazine The Nation reported: "As it turns out,

Officer Elisheba Vera lied to the court." Arbuckle was found not guilty.

141.    Upon information and belief, Damien Treffs was a legal observer

accompanying the same January 1, 2012 march.  He was violently arrested without

warning.  The District Attorneys office declined to prosecute the case because probable

cause was lacking for the arrest.

142.    Upon information and belief, police officers committed perjury in order to

press charges against another OWS protestor, Jessica Hall, who was arrested for blocking

street traffic on November 17, 2011, the date of OWS' " International Day of Action".[3]

As The Nation reported, the truth exposed at her trial was quite different:  "During trial,

Sergeant Michael Soldo told the court that he arrested Hall because she was blocking

traffic.  But Soldo later admitted under cross-examination, and the NYPD's own video

confirmed, that it was the NYPD metal barricades that prevented vehicles from passing."

143.    Upon information and belief, police lied to support the arrest of a protestor

arrested at an Occupy-related protest on Sept. 19, 2011, The protestor was arrested for –

---

[3] http://occupywallst.org/action/november-17th/.

according to NYPD spokesman Paul Browne – leaping over a police crowd-control barrier.  Video of the incident, however, showed that the arresting officers reached across the barrier and forcibly dragged the individual over it.

144.    The Defendant POLICE OFFICERS targeted Plaintiff for arrest due to her presence at an OWS event.

<u>THE CITY OF NEW YORK AND THE NYPD HAVE A POLICY AND PRACTICE OF TARGETING INDIVIDUALS WITH CAMERAS, COMPUTERS OR BROADCAST DEVICES, WHO ARE OR APPEAR TO BE FILMING POLICE OR PROTEST ACTIVITY, FOR PUNITIVE ARREST.</u>

145.    Throughout the OWS movement, the NYPD has a pattern and practice of singling out individuals who are using cameras or other broadcast devices in the vicinity of police.

146.    The New York Civil Liberties Union has documented multiple such incidents as part of its ongoing Free Speech Threat Assessment project.

147.    The first report in that project documents improper NYPD responses to OWS protests during the period March 17 - April 10, 2012.  The report highlighted reprisals against journalists and photographers by the NYPD at Zuccotti on the same evening that the Defendant POLICE OFFICERS arrested Plaintiff.

148.    Journalists have also been injured and denied access to scenes of arrests. For example, during the March 17 mass arrest at Zuccotti Park which is at issue in the present case, a BBC reporter and his photographer tweeted that the photographer, after falling down, was trampled by six officers, beaten with a baton, and had his hair grabbed while yelling "I'm press!"  A New York Daily News reporter stated that she hurt her leg during a scuffle when police were "out of control shoving #ows protesters and reporters on the ground."  One freelance journalist reported that she was pushed to ground and had

her breast grabbed by an NYPD officer, while another was struck on the shoulder by a police officer while taking a picture.[4]

149.  Subsequent reports documented the practice continued with regularity.[5]

150.  Indeed, major press organizations such as the New York Press Club, The New York Times, the Associated Press, and others have complained that even NYPD-credentialed journalists have been subjected to interference, harassment and arrest at OWS events from the beginning of the movement.

151.  Such practices are not confined to OWS-related incidents.  Notoriously, the 30th Precinct in Manhattan posted an internal "wanted" poster targeting two activists who made a practice of filming officers engaged in stop-and-frisk activities. http://www.nydailynews.com/new-york/uptown/nypd-brands-occupy-wall-street-couple-professional-agitators-plaster-photos-flyers-article-1.1106746

152.  This is part of a larger and long-standing practice of targeting those who observe or film the police, in violation of the Constitution and the 1973 consent decree entered in Black v. Codd, 73-cv-5283 (SDNY). In that case, Defendant THE CITY OF NEW YORK entered into a so-ordered stipulation that "None of the following constitutes probable cause for arrest or detention of an onlooker" ... "(c) taking photographs."  This stipulation, of course, simply restated what was even then well-established law.

---

[4]  "FREE SPEECH THREAT ASSESSMENT # 1: Policing Protest in New York City", NYCLU, March 17 to April 10, 2012

[5]  "FREE SPEECH THREAT ASSESSMENT # 2: Policing Protest in New York City," NYCLU, April 11, 2012 to April 28, 2012; "FREE SPEECH THREAT ASSESSMENT # 3: Policing Protest in New York City," NYCLU, April 29, 2012 to May 29, 2012; "FREE SPEECH THREAT ASSESSMENT # 4: Policing Protest in New York City," May 30, 2012 to June 17, 2012; "FREE SPEECH THREAT ASSESSMENT # 5: Policing Protest in New York City," NYCLU, June 17, 2012 to August 1, 2012.

**153.**    Upon information and belief, Plaintiff was targeted for arrest on March 17, 2012 because she was live-streaming an OWS event; to wit, recording both protester as well as police activity.

**154.**    Plaintiff was targeted for arrest on March 29, 2012 because she was asking why she was being detained and recording police activity.

**155.**    The Defendant POLICE OFFICERS' arrest of Plaintiff was undertaken in violation of the stated policies adopted by Defendant THE CITY OF NEW YORK pursuant to The Consent Decree.

**156.**    All of the foregoing demonstrates not only affirmative implementation of unlawful policies and practices by Defendant The City of New York, but also a comprehensive failure to supervise and train police officers in lawful police tactics.

**157.**    The aforesaid actions were undertaken by the Defendant POLICE OFFICERS in flagrant violation of the terms of The Consent Decree.

**158.**    The foregoing demonstrates not only affirmative implementation of unlawful policies and practices by Defendant THE CITY OF NEW YORK, but also a comprehensive failure to supervise and train police officers in lawful police tactics.

**159.**    As a result of the above constitutionally impermissible conduct, Plaintiff suffered violation of her civil rights, emotional distress, anguish, anxiety, fear, humiliation, physical injury, and lost wages.

**160.**    Accordingly, the Plaintiff demands judgment against Defendants in a sum of money to be determined at trial.

WHEREFORE and in light of the foregoing, it is respectfully requested that the Court assume jurisdiction and:

[a] Invoke pendent party and pendent claim jurisdiction.

[b] Award appropriate compensatory and punitive damages.

[c] Award appropriate declaratory and injunctive relief.

[d] Empanel a jury.

[e] Award attorney's fees and costs.

[f] Award such other and further relief as the Court deems to be in the

interest of justice.

DATED:     New York, New York
           November 26, 2013

Respectfully submitted,

_____
WYLIE M. STECKLOW [WS 6012]
STECKLOW, COHEN & THOMPSON
10 Spring Street - Suite 1
New York, New York 10012
Tel [212] 566-8000
Fax [212] 202-4952
ATTORNEYS FOR PLAINTIFF
ELIZABETH ARCE